UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MIKAELA ARRIYAM HILL, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendant. | Case No. <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL <br><br> **JURY TRIAL DEMANDED** |

## I.  INTRODUCTION

1. This is an action to recover damages for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* (the "FCRA").

2. Defendant reported a variety of credit accounts which did not belong to Plaintiff, including but not limited to accounts with Capital One Bank, Credit One Bank, Merrick Bank, Wells Fargo, Lowes, Heritage Foundation, CCS Collections, Goodleap LLC, and Fingerhut/Webbank on Plaintiff's consumer report. Defendant further reported the Non-Consumer's personal identifying information, including but not limited to the Non-Consumers name, address, and Social Security Number.

3. Equifax's reporting was inaccurate because these tradelines do not belong to Plaintiff, but rather belong to a different consumer with a similar name named Mikayla Maria Hill (the "Non-Consumer").

1

4. Upon information and belief, Defendant further reported Plaintiff's own tradelines and personal identifying information to the Non-Consumers creditors who were not authorized to view Plaintiff's private credit information and personal identifying information.

## II. PARTIES

5. Plaintiff Mikaela Arriyam Hill ("Plaintiff") resides in Charlotte, North Carolina and qualifies as a "consumer" under the FCRA.

6. Defendant Equifax Information Services, LLC. ("Defendant" or "Equifax") is a consumer reporting agency that maintains its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia, 30309.

## III. JURISDICTION AND VENUE

7. The claims asserted in this complaint arise under 15 U.S.C. §§1681e(b) and 1681i. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

8. Venue is proper in this District under 28 U.S.C. § 1391(b).

## IV. FACTS

### A. Plaintiff Applies for Credit with Capital One

9. In August 2023, Plaintiff applied for a credit card issued by Capital One Bank.

10. In connection with that application, on August 18, 2023, Capital One obtained a credit report from Equifax to determine Plaintiff's creditworthiness and eligibility for credit.

11. After reviewing the Equifax credit report, Capital One granted Plaintiff's application but issued a credit card with unfavorable terms.

12. Plaintiff was surprised, as Capital One had previously granted her credit on more favorable terms.

13. After learning that the decision was based on information provided by Equifax, Plaintiff obtained a copy of her Equifax credit report.

14. Upon reviewing the Equifax report, Plaintiff identified fifteen (15) different accounts that did not belong to her, as follows:

| **Wells Fargo DLR SVC**<br>Date Opened: Apr 08, 2023<br>Balance: $0 | **Capital One**<br>Date Opened: Jun 06, 2023<br>Balance: $0 | **Capital One**<br>Date Opened: Nov 14, 2018<br>Balance: $0 |
|---|---|---|
| **Heritage Finance Com**<br>Date Opened: May 18, 2015<br>Balance: $0 | **SYNCB/Care Credit**<br>Date Opened: Nov 29, 2021<br>Balance: $0 | **Capital One**<br>Date Opened: Mar 24, 2018<br>Balance: $4 |
| **Credit One Bank**<br>Date Opened: Aug 30, 2018<br>Balance: $1604 | **Merrick Bank**<br>Date Opened: Dec 31, 2020<br>Balance: $2021 | **Fingerhut/Webbank**<br>Date Opened: Nov 14, 2018<br>Balance: $0 |
| **Credit One Bank** | **Capital One** | **Goodleap LLC** |

| | | |
|---|---|---|
| Date Opened: Jul 18, 2022<br>Balance: $95 | Date Opened: Oct 11, 2021<br>Balance: $0 | Date Opened: Jan 18, 2023<br>Balance: $9163 |
| **SYNCB/Lowes**<br>Date Opened: Oct 21, 2022<br>Balance: $0 | **Credit One Bank**<br>Date Opened: Sep 11, 2019<br>Balance: $0 | **CCS Collections**<br>Date Closed: Jun 12, 2023<br>Original Creditor: Esurance an Allstate Company<br>Balance: $0 |

15. Upon further review, information and belief, the reason for the less favorable terms had to do with the contents of Plaintiff's Equifax credit report.

16. Plaintiff was shocked and confused to find a myriad of credit card accounts and personal identifying information which did not belong to her being reported on her Equifax consumer report.

**B.   Plaintiff's Mixed File as of August 2023**

17. Shocked, worried, and confused, Plaintiff decided to review the contents of her Equifax consumer report to determine the origin of the inaccurately reported information.

18. Plaintiff discovered that Defendant had mixed Plaintiff's credit file with that of the Non-Consumer and was reporting both their information within the same single consumer report.

19. Plaintiff's first name is spelled "Mikaela" not "Mikayla."

20. Plaintiff lives in North Carolina and not in South Carolina.

21. Further, Defendant reported fifteen (15) tradelines that did not belong to Plaintiff.

22. The aforementioned inaccurate reporting consisting of the name, address, and tradelines of the Non-Consumer (the "Inaccurate Information") did not belong to Plaintiff.

23. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

24. Concerned, worried, and confused about the Inaccurate Information being reflected on her credit file due to Defendant's inaccurate reporting, Plaintiff resolved to reach out to Defendant to have the Inaccurate Reporting corrected.

**C. Plaintiff's August 2023 Dispute with Defendant**

25. On or around August 20, 2023, worried that something was very wrong with her credit file, Plaintiff submitted a dispute to Defendant regarding the Inaccurate Information ("August 2023 Dispute").

26. On or around August 23, 2023, Defendant responded to Plaintiff's August 2023 Dispute with a letter indicating that they had confirmed reporting was accurate and would not remove it from Plaintiff's credit file.

27. To add insult to injury, Defendant even began reporting the Social Security Number of Non-Consumer on Plaintiff's credit file.

28. Wherein Equifax had before been reporting Plaintiff's Social Security Number accurately, Defendant began reporting the Social Security Number of the Non-Consumer following Plaintiff's August 2023 dispute.

29. Defendant failed to conduct a reasonable investigation of Plaintiff's August 2023 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

30. By removing Plaintiff's accurate Social Security Number and reporting the Non-Consumer's Social Security Number following Plaintiff's dispute in Plaintiff's credit file, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

31. Plaintiff was desperate for credit and no choice but accept Capital One's approval for credit as less favorable terms on or around August 23, 2023.

**D.   Plaintiff's October 2023 Disputes with Defendant**

32. After the first failed dispute, Plaintiff was afraid to apply for credit again because she feared she would face similar adverse actions due to Equifax's inaccurate reporting.

33. Defendant's punitive response to the August 2023 dispute, and its decision to start reporting the inaccurate social security number, left Plaintiff feeling trapped and helpless.

34. As a result, Plaintiff held off on any further applications for credit despite her serious need for it.

35. Not willing to give up hope, Plaintiff submitted a total of eleven (11) disputes to Defendant in or about October 2023 requesting that Defendant remove the Inaccurate Information from Plaintiff's credit file ("October 2023 Disputes").

36. Plaintiff received responses from Defendant for her eleven (11) October 2023 Disputes on the following dates:

    (a) October 9, 2023, Confirmation No. 3282561841
    (b) October 9, 2023, Confirmation No. 3282550229
    (c) October 10, 2023, Confirmation No. 3282561596
    (d) October 10, 2023, Confirmation No. 3282542114
    (e) October 11, 2023, Confirmation No. 3282551679
    (f) October 12, 2023, Confirmation No. 3282551944
    (g) October 16, 2023, Confirmation No. 3282549687
    (h) October 17, 2023, Confirmation No. 3282553061
    (i) October 21, 2023, Confirmation No. 3282548341
    (j) October 21, 2023, Confirmation No. 3282547637
    (k) October 24, 2023, Confirmation No. 3282552391

37. Plaintiff further, fearing that she had been the victim of identity theft or fraud, reached out the creditors of the Non-Consumer beseeching them to cease reporting the Non-Consumer's credit accounts in Plaintiff's name.

38. In each of the responses of the aforementioned October 2023 Disputes, Defendant responded to Plaintiff's with a letter indicating that they had confirmed the Inaccurate Information as accurate and would not remove it from Plaintiff's credit file.

39. Defendant continued to grossly report the Inaccurate Information in Plaintiff's response despite receiving numerous disputes requesting they cease doing the same.

40. Defendant continued to inaccurately report the name, address, Social Security Number, and credit accounts of the Non-Consumer on Plaintiff's credit file despite Plaintiff having lodged eleven (11) disputes from October 9, 2023, through October 24, 2023.

41. During this time, Defendant only removed a single credit account from Plaintiff's consumer report, specifically, a Capital One account which belonged to the Non-Consumer.

42. Defendant otherwise continued to report the Inaccurate Information in Plaintiff's credit file dispute her numerous October 2023 Disputes.

43. Upon information and belief, the inaccurate Capital One account was only removed from Plaintiff's credit file due to her efforts in reaching out to the creditors of the Non-Consumer for fear of being the victim of fraud or identity theft.

44. Defendant failed to conduct a reasonable investigation of Plaintiff's August 2023 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

E.   **Plaintiff's Merged File between October 2023 and January 2024**

45. On or around January 18, 2024, the Non-Consumer filed a Complaint against Defendant in the United States District Court for the District of South Carolina for violations of the FCRA ,15 U.S.C. §§ 1681, *et. seq*. under the caption *Mikayla Hill v. Equifax Information Services, LLC*, Case No. 8:24-cv-00324-TMC.

46. Evidence adduced in the course of that lawsuit indicates that Equifax had "merged the credit files of Plaintiff and Non-Consumer.

47. As opposed to a "mixed file", which occurs when a consumer reporting ("CRA"), such as Defendant, reports the information of one consumer on the credit report of another consumer; a "merged file" occurs when a CRA merges the credit files of two or more separate consumers into a single credit file.

48. As a result of Defendant's merging Plaintiff's credit file with the Non-Consumer's, both of them were seeing the personal identifying information and credit accounts of the other.

49. This resulted in a series of disputes being lodged by both Plaintiff and the Non-Consumer requesting that Defendant properly reflect only their information in the same credit file.

50. Upon information and belief, Defendant continued to mix Plaintiff's credit file with that of the Non-Consumer until after the Non-Consumer filed her lawsuit against Defendant in or about January 2024.

51. By merging Plaintiff's and the Non-Consumer's credit files into a single file and publishing Plaintiff's information to the Non-Consumer, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

52. Upon information and belief, Defendant did not investigate the reason for why one credit file could become associated with two Consumers, even when both Consumers lodged numerous disputes with Defendant throughout the course of 2023.

53. Defendant failed to conduct a reasonable investigation of Plaintiff's and the Non-Consumer's many disputes over the course of 2023, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

54. As a result of Defendant's conduct, Plaintiff still struggles to access her credit information from her myEquifax account from any time prior to January 2024.

55. As a result of the "merged file," Defendant made it practically impossible for Plaintiff to obtain credit.

56. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

57. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

58. Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

59. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of

credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

60. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

61. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports. *See* 15 U.S.C. §1681e(b).

62. On at least one occasion, Defendant prepared patently false consumer reports concerning Plaintiff.

63. Defendant mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

64. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

65. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

66. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

67. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

68. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

69. The FCRA mandates that Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

70. The FCRA provides that if Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

71. Plaintiff initiated at least three disputes with Defendant and disputed inaccurate information reporting.

72. Defendant failed to respond to Plaintiff's disputes and conducted *no* investigation of Plaintiff's disputes, or such investigations, if any, were so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

73. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

74. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit

denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

75. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## DEMAND FOR JURY TRIAL

77. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief: (i) determining that Defendant negligently and/or willfully violated the FCRA; (ii) awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA; (iii) awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and (iv) granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully Submitted this on June 13th 2025.

                                                  By: */s/ Moshe O. Boroosan*
Moshe Boroosan, GA Bar #744128
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing NY 11367
T: (718) 887-2926
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff Mikaela A. Hill*